**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: October 10 2007

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 07-31764 |
| | ) | |
| George Figueroa and | ) | Chapter 7 |
| Ana C. Figueroa, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtors' Chapter 7 case for abuse under 11 U.S.C. § 707(b)(3) [Doc. # 20] and Debtors' response [Doc. # 23]. A hearing was held that Debtors, their counsel and counsel for the UST attended in person and at which the parties had the opportunity to present testimony and other evidence in support of their respective positions.

The court has jurisdiction over this case under 28 U.S.C. §1334 and the general order of reference entered in this district. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A). Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will deny the UST's motion.

### BACKGROUND

Debtors are married and have three dependent children. George Figueroa is employed as a truck driver at Swift Transportation Inc., where he has worked for the past three years, and Ana Figueroa is employed as a day care provider at Calvary Assembly of God, where she has worked for approximately five

and one-half years. On May 1, 2007, Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code. Their Schedule D shows total secured debt in the amount of $128,232, unsecured nonpriority debt, consisting primarily of credit card debt, in the amount of $56,502, and no unsecured priority debt.

Debtors are below the applicable median income for a family of five for purposes of the means test under 11 U.S.C. § 707(b)(2). Their Schedule I shows total monthly gross income of $5,570, and total monthly income after payroll deductions in the amount of $4,391. A review of George Figueroa's prepetition pay advices filed in this case shows that his weekly income after payroll deductions was variable from a low of $361 to a high of $918, with an average of $653 per week. The court credits his testimony that since filing, his income has decreased to and average of $500 per week. Although he did not specify whether this figure was his average gross or net income, the court assumes it is a weekly average of his income after payroll deductions. Mr. Figueroa testified that the decrease in income is due to the fact that he is being assigned fewer miles and, as a truck driver, is paid on a per mile basis. He does not know the length of time this apparent downturn in business will continue.

Debtors' Schedule J filed with their petition shows total monthly expenses in the amount of $3,909, which includes a mortgage expense of $900, which in turn includes expenses for property taxes and insurance. At the hearing, George Figueroa testified that, since filing their petition, Debtors' monthly mortgage expense has increased by approximately $300 and that the increase is due to the interest rate of their adjustable rate mortgage being increased from approximately 7.0% to approximately 10.0%.[1]

The UST filed a timely motion to dismiss for abuse under § 707(b)(3), arguing that the totality of the circumstances are such that Debtors have the ability to repay at least a portion of their unsecured debt.

## LAW AND ANALYSIS

This case must be decided under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, ("BAPCPA" or "the Act") as it was filed on May 1, 2007, after the effective date of the Act. Where debts are primarily consumer debts, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth

---

[1] Debtors attach to their response to the motion to dismiss a letter addressed to them on May 17, 2007, from Option One Mortgage notifying them that their interest rate on their adjustable rate mortgage is being adjusted from 7.45% to 10.45%. [Doc. # 23, Ex. A].

2

Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3) by requiring a court to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA, Congress has clearly lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).

The UST contends that the totality of the circumstances show that Debtors have the ability to repay a significant portion of their unsecured debt. The totality of the circumstances test allows the court to consider both prepetition and postpetition circumstances. *See U.S. Trustee v. Cortez (In re Cortez)*, 457 F.3d 448, 455 (5th Cir. 2006) ("Section 707(b) does not condition dismissal on the *filing* of bankruptcy being [an abuse] but rather on the *granting of relief,* which suggests that in determining whether to dismiss under § 707(b), a court may act on the basis of any development occurring *before* the discharge is granted."); *In re Mestemaker,* 359 B.R. 849, 855-56 (Bankr. N.D. Ohio 2007); *In re Hartwick*, 359 B.R. 16, 21 (Bankr. D.N.H. 2007). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone is sufficient to warrant dismissal. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *Id.* at 126-27. "Courts generally evaluate as a component of a debtor's ability to pay whether there would be sufficient income in excess of reasonably necessary expenses to fund a Chapter 13 plan." *Mestemaker*, 359 F.3d at 856 (citing *In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004)).

In this case, Debtors' unsecured debts are less than the limits for eligibility for relief under Chapter 13. *See* 11 U.S.C § 109(e). The UST contends that granting Debtors a Chapter 7 discharge would be an abuse because they can fund a Chapter 13 plan. While it is true that Debtors' Schedules I and J show income after expenses in the amount of $482, Debtors financial circumstances have materially changed since filing. As discussed above, Debtors have experienced a postpetition decrease in income of

3

approximately $960 per month.[2] Although George Figueroa, understandably, did not know whether this would be a permanent decrease, the court nevertheless considers this apparent instability in his income as a factor in its determination under § 707(b). In addition, Debtors have also experienced a $300 increase in their mortgage expense due to a dramatic increase in the interest rate of their adjustable rate mortgage. With this adjustment to Debtors' monthly expenses, without even considering the decrease in income, their net income is $182 per month. The UST concedes that the applicable commitment period for a Chapter 13 plan for Debtors, whose income is below the median income for a family of their size in Ohio, would be 36 months. Applying net income of $182 to repayment of unsecured creditors over 36 months would yield a total payment of $6,552. Debtors' unsecured debt totals $56,502. Thus, unsecured creditors would potentially receive a dividend of less than 11.0% after deduction of the Chapter 13 Trustee's administrative expenses. The court does not find this to be a significant repayment to unsecured creditors such that granting Debtors a discharge in this case would be an abuse of the provisions of Chapter 7.

In so finding, the court has considered the instability in Debtors' income as well as the lack of any additional circumstances demonstrating abuse. And there is no suggestion that there are state remedies that may ease Debtors' financial predicament.

The court will enter a separate order denying the UST's motion in accordance with this Memorandum of Decision.

---

[2] The court's calculation is based on George Figueroa's Schedule I monthly income after payroll deductions of $3,130 less his monthly income after payroll deductions of $2,166 ($500 x 52 ÷ 12) in accordance with his testimony, yielding a decrease of approximately $964.